Stephen J. Thomas (SBN 120751)
Michael Liu (SBN 294571)
THOMAS BUSINESS LAW GROUP, P.C.
17800 Castleton Street, Suite 657
City of Industry, CA 91748
Telephone: (626) 771-1005
Facsimile: (626) 628-1905

**Attorneys for Plaintiff YONGLEI ZHANG**

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| YONGLEI ZHANG, an individual,<br><br>                    Plaintiff,<br><br>vs.<br><br>CHEONGWHA CHANG, an individual; TONI TONG CHEN, an individual; CHUN KIN POON, an individual; HOWARD SHI, an individual; HTC CONSULTING LLC, a California limited liability company; CKB168 HOLDINGS LTD., a foreign business entity; CKB168 LTD., a foreign business entity; CKB168 BIZ SOLUTION, INC., a foreign business entity; CKB INTERNATIONAL MARKETING, a foreign business entity; CKB MAX, a foreign business entity; CYBER KIDS BEST EDUCATION, LTD., a foreign business entity; RAYLA MELCHOR SANTOS, an individual; HUNG WAI ("HOWARD") SHERN, an individual; RUI LING ("FLORENCE") LEUNG, an individual; DALIANG ("DAVID") GUO, an individual; YAO LIN, an individual; CHIH HSUAN ("KIKI") LIN, an individual; WEN CHEN HWANG ("WENDY LEE"), an individual; JOAN CONGYI MA (AKA "JC MA"), an individual; HEIDI MAO LIU (AKA "HEIDI MAO"), an individual; LI SHU ZHEN, an individual; SHU XIAO JIE, an individual; and DOES 1 through 100, | Case No<br><br><br>**COMPLAINT FOR DAMAGES**<br><br>**1. FRAUD AND DECEIT**<br>**2. ENDLESS CHAIN SCHEME IN VIOLATION OF CALIFORNIA LAW**<br>**3. VIOLATION OF CORPORATE SECURITIES LAW OF 1968 CA CORP. CODE §§ 25100 et seq.**<br>**4. VIOLATION OF CORPORATE SECURITIES LAW OF 1968 CA CORP. CODE § 24500 et seq.**<br>**5. VIOLATION OF THE SECURITIES ACT OF 1933 SECTION 12(1)**<br>**6. VIOLATION OF THE SECURITIES ACT OF 1933 SECTION 12(2)**<br>**7. VIOLATION OF THE SECURITIES EXCHANGE ACT** |

|  |  |
|---|---|
| Defendants. | **OF 1934 SECTION 10(b)**<br>**8. COMMON COUNTS – MONEY**<br>**HAD AND RECEIVED**<br>**9. CONVERSION**<br>**10.   UNFAIR COMPETITION**<br>**CAL. BPC. CODE § 17200** |

Plaintiff YONGLEI ZHANG complains against CHEONGWHA CHANG, an individual; TONI TONG CHEN, an individual; CHUN KIN POON, an individual; HOWARD SHI, an individual; HTC CONSULTING LLC, a California limited liability company; CKB168 HOLDINGS LTD., a foreign business entity; CKB168 LTD., a foreign business entity; CKB168 BIZ SOLUTION, INC., a foreign business entity; CKB INTERNATIONAL MARKETING, a foreign business entity; CKB MAX, a foreign business entity; CYBER KIDS BEST EDUCATION, LTD., a foreign business entity; RAYLA MELCHOR SANTOS,  an individual; HUNG WAI ("HOWARD") SHERN, an individual; RUI LING ("FLORENCE") LEUNG, an individual; DALIANG ("DAVID") GUO, an individual; YAO LIN, an individual; CHIH HSUAN ("KIKI") LIN, an individual; WEN CHEN HWANG ("WENDY LEE"), an individual; JOAN CONGYI MA (AKA "JC MA"), an individual; HEIDI MAO LIU (AKA "HEIDI MAO"), an individual; LI SHU ZHEN, an individual; SHU XIAO JIE, an individual; and DOES 1 through 100, and alleges as follows:

\\

**PARTIES**

1.     Plaintiff YONGLEI ZHANG, is an individual residing in the State of New Jersey, who was defrauded by Defendants while he was visiting California.

2.     Defendants CKB168 HOLDINGS, LTD; CKB168; CKB168 BIZ SOLUTIONS, INC.; CKB INTERNATIONAL MARKETING; CKB MAX; and CYBER KIDS BEST EDUCATION, LTD., are business entities organized under the laws of Hong Kong, Canada and the British Virgin Islands entered into repeated and successive transactions of its business in California as defined by *California Corporations Code§§* 191, 15901.02(a)(i) and 17001(a)(p), but have not qualified to conduct such business in California by registering with the California. Secretary of State, *California Corporations Code§§* 2105, 15909.02, 16959 or 17451.

3.     Defendant CHEONGWHA CHANG ("HEYWOOD") is an individual, residing within the County of Los Angeles, State of California, and is the husband of defendant Toni Chen and a promoter of the entities identified in paragraph 2 of this Complaint.

4.     Defendant TONI TONG CHEN ("TONI") is an individual, residing within the County of Los Angeles, State of California, and is the wife of defendant Heywood and a promoter of the entities identified in Paragraph 2 of this Complaint.

5.     Defendant CHUN KIN POON ("CHUN") is an individual, residence unknown and promoter of the entities identified in Paragraph 2 of this Complaint.

6.     Defendant HOWARD SHI ("HOWARD SHI") is an individual, residing in Hong Kong and a promoter of the entities identified in Paragraph 2 of this Complaint.

7.     Defendant HTC CONSULTING, LLC., is a California limited liability company doing business within the County of Los Angeles, State of California, and is the alter ego of the individual Defendants listed in Paragraphs 3 through 7 of this Complaint and a participant in the scheme.

8.     Defendant RAYLA MELCHOR SANTOS ("RAYLA") is an individual, residence unknown, an executive and promoter of the entities identified in Paragraph 2 of this Complaint.

9.     HUNG WAI SHERN ("HOWARD SHERN"), is an individual, residing in Hong Kong, an executive and promoter of the entities identified in Paragraph 2 of this Complaint.

10.     RUI LING LEUNG ("FLORENCE"), is an individual, residence unknown, an executive and promoter of the entities identified in Paragraph 2 of this Complaint.

11.     DALIANG GUO ("DAVID"), is an individual, residing in Coram, Suffolk County, New York, is one of the first U.S. promoters of the entities identified in Paragraph 2 of this Complaint.

12.     YAO LIN ("YAO"), is an individual, residing in Fresh Meadows, Queens County, New York, is one of the first U.S. promoters of the entities identified in Paragraph 2 of this Complaint.

13.     CHIH HSUAN LIN ("KIKI"), is an individual residing in Las Vegas, Clark County, Nevada and a promoter of the entities identified in Paragraph 2 of this Complaint.

14.     WEN CHEN HWANG ("WENDY LEE"), is an individual residing in Los Angeles County, California and a promoter of the entities identified in Paragraph 2 of this Complaint.

15.     JOAN CONGYI MA ("JC MA"), is an individual residing in Los Angeles County, California and a promoter of the entities identified in Paragraph 2 of this Complaint.

16.     HEIDI MAO LIU ("HEIDI"), is an individual residing in Los Angeles County, California and a promoter of the entities identified in Paragraph 2 of this Complaint.

17.     LI SHU ZHEN ("LI"), is an individual residing in Los Angeles County, California and a promoter of the entities identified in Paragraph 2 of this Complaint.

18.     SHU XIAO JIE ("SHU") is an individual residing in Los Angeles County, California and a promoter of the entities identified in Paragraph 2 of this Complaint.

19.     All Defendants listed in Paragraphs 3 through 18 are executives and/or promoters of an illegal pyramid scheme operated by the entities listed in Paragraph 2 of this Complaint, which collectively operate under the business names "CKB" and "CKB168."

20.     The true names or capacities, whether individual, corporate, associate, or otherwise of defendants named in this action as DOES 1-100 are unknown to Plaintiff, who therefore sues such Defendants by such fictitious names. Said fictitiously named Defendants are in some manner proximately responsible for the damages suffered by Plaintiff herein. Plaintiff will amend this complaint to show the true names and capacities of such fictitiously named defendants when they have been ascertained.

## JURISDICTION AND VENUE

21.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 (Federal Question), as an action for violation of the Securities Act of 1933 and the Securities Exchange Act of 1934.

22.     This Court has jurisdiction over the California state law claims under 28 U.S.C. § 1367 (Supplemental Jurisdiction) because this Court has federal question jurisdiction regarding the original claim and the state law claims closely relate, in that they stem from the same case or controversy, as the federal claims.

23.     Defendants solicited investments worldwide, including California. As a

result, Defendants' contacts with the state of California are such that Defendants could reasonably expect to be haled into court in California. *International Shoe Co. v. Washington*, 326 U.S. 310.

24.     Venue in this District is proper under 28 U.S.C. § 1391(b), in that most of the Defendants reside in this District, and a substantial part of the events or omissions giving rise to the claims herein occurred in this District.

## BACKGROUND

## NATURE OF THE CASE

25.     Plaintiff is an individual who was defrauded by defendants into investing in an endless chain scheme using both a pyramid sales scheme and the sale of worthless securities. This sales scheme used material for internet teaching of children as a prop; the securities were fraudulent under both California and federal law. The individually named Defendants and unnamed Doe Defendants operated the scheme. According to an investigation and complaint by the Securities and Exchange Commission ("SEC"), the scheme was concocted by overseas entities operating collectively under the name "CKB 168." CKB 168 is the endless chain promoted by individual Defendants. Overall, Plaintiff was induced to pay Defendants $600,000.00, only a small part of which has been recouped from Defendants.

\\

## FACTUAL ALLEGATIONS

26.     In May, 2013, through a mutual friend, TONI and HEYWOOD met with Plaintiff to discuss a business opportunity. Defendants discussed the business opportunity with a company named CKB168.com, or CKB. At that time, Defendants represented to Plaintiff that they had invested $250,000.00 in April, 2013, and to that date had made $2 million in profit, represented that they had made $700.000.00 in the preceding month, and represented that Plaintiff could make sixteen times the original investment in as little as eighteen months.

27.     At the same time, Defendants represented that CKB sells on-line education courses for children at $1,380.00 per course, and that if an investor put up $1,380.00, he or she could get both the course and points ("PRPT") which could be converted into the stocks in CKB'S Initial Public Offering ("the CKB stock") in 2014 with the return of 16 times of the principal investment within one year and a half.

28.     Defendants further represented that the best amount for him to invest was $250,000.00 to purchase 180 units because he could earn 25% commission. Copies of written promotional materials provided to Plaintiff by Defendants, including email correspondence and printed brochures detailing commissions and dividend opportunities, with almost no information on the actual product the scheme was purportedly selling. These materials actually focus on the creation of a multi-

level marketing scheme in which "positions" using meaningless company employee and officer titles paying increasing levels of "commissions" paid are derived almost exclusively from the sale of investment opportunities to new persons, or "downline" in the parlance of pyramid schemes, with those persons who bought into the scheme earlier ("upline") are paid a portion of those commissions, with the upline earning approximately 85% of new "investments."

29.    Defendants TONI and HEYWOOD befriended Plaintiff and invited him to stay in their house when Plaintiff was in town. Plaintiff trusted TONI both as a friend and as an investment advisor, agreed to and did wire $250,000.00 to CKB designated by TONI in Hong Kong.

30.    Defendant TONI, speaking for other Defendants, advised Plaintiff that CKB is opening its educational children centers in China, and invested in software development companies in Southeast Asian countries, and urged Plaintiff to invest more money so he could get into a higher Director position level in order to make money even quicker on commissions, and get more PRPT to exchange the stocks when CKB goes public in 2014.

31.    On or about July 2, 2013, TONI gave Plaintiff a blank check and handwrote VOID on it and asked Plaintiff to wire $350,000 to Defendant CHUN, whose address is the same as TONI and HEYWOOD. Plaintiff invested an additional $350,000.00 to qualify for the 30% return on invested funds, which was

then used to purchase 250 more "units" on Plaintiffs behalf. These funds, as well as other funds received by the individual Defendants TONI, HEYWOOD, and CHUN were deposited into bank accounts in their own names or in accounts in the names of the entity Defendant HTC Consulting, LLC.

32.     True and correct copies of Plaintiff's investment funds consisting of the wires to CHUN are attached hereto and incorporated hereat as Exhibits A, B, C, and D.

33.     After TONI received the wire transfer from Plaintiff through CHUN, TONI emailed Plaintiff acknowledgment of the units he purchased and generated the equivalent accounts for Plaintiff.

34.     After the funds were transferred in August, 2013, TONI showed Plaintiff that his account earned commissions of over $60,000.00. Plaintiff asked TONI for payment of those commissions, but both TONI and HEYWOOD found various excuses to delay payment, and advised him that the commission will keep on rolling over for more returns.

35.     Plaintiff decided to completely withdraw his funds, but Defendants refused to refund his investment.

36.     Throughout this time, Plaintiff attended various meetings, seminars, and classes held by Defendants throughout Los Angeles County.

37. Defendants RAYLA, DAVID, WENDY LEE, and HOWARD SHERN were the main presenters at these events.

38. These events were held for the express purpose of encouraging investors to purchase CKB stock.

39. The above-named Defendants made repeated representations that, among other things, CKB was a stable company, sold real products, that the company's IPO would launch soon, and investors would make huge returns on their investments.

40. Additionally, attendees at these events were shown video presentations where Defendant FLORENCE gave prerecorded speeches encouraging investors to buy stock in CKB, represented the stability of CKB, and guaranteed large profits to investors when the company's stock went public.

41. Defendant JC MA on several occasions spoke to Plaintiff in person, encouraging him to buy stock, and represented that CKB was a great company with very strong financials, claimed to have made one million dollars, and promised Plaintiff he would make lots of money from the stock.

42. On October 17, 2013, the SEC announced charges and asset freezes against the operators and promoters of the scheme. Named by the SEC were the entities named in Paragraph 2 of this Complaint based in Hong Kong, Canada, and the British Virgin Islands that collectively operate under business names "CKB" and

"CKB168" as being at the center of the scheme. Named in the SEC complaint, styled *Securities and Exchange Commission v. CKB 168 Holdings Ltd. et al*, EDNY Case No: 1:2013cv05584, were the Defendants as having received ill-gotten funds or assets as a result of the illegal acts of the other named defendants.

43.     The so-called educational program was only a prop to give the appearance of a legitimate multi-level marketing program.

44.     Persons participating in this scheme earned commissions or the right to obtain "shares" and earn "dividends of shares" primarily through introducing one or more additional persons into participating in the scheme.

45.     Through the efforts of three CKB executives, RAYLA, HOWARD SHERN, and FLORENCE who live overseas and several promoters living in the United States, including Defendants herein, the scheme has ensnared at least 400 investors in New York, California, and other areas with large Asian-American communities. These promoters, including Defendants, have raised more than $20 million from U.S. investors, and millions of dollars more from investors in Canada, Taiwan, Hong Kong, and other countries in Asia through exploiting close connections among members of the Asian American community. The scheme's operators and promoters, including Defendants, use Internet videos, promotional materials, and seminars to create the appearance of a legitimate enterprise.

46.   In reality, CKB has little or no real-world retail consumer sales to generate the extraordinary returns promised to investors. In fact, CKB has no apparent source of revenue other than money received from new investors.

47.   The SEC determined, through examination of bank records, that the bulk of the money raised has been paid out to accounts controlled by CKB executives and as commissions to promoters of the pyramid scheme.

ALTER EGO - HTC CONSULTING LLC, HEYWOOD, TONI, CHUN AND HOWARD

48.   There is such a unity of interest and ownership of the separate personalities between Defendant corporation HTC Consulting LLC and the individual Defendants HEYWOOD, TONI, CHUN and HOWARD the individual DOE Defendants no longer exists; failure to disregard the separate corporate identity of HTC Consulting LLC, from the separate identity of the individual Defendants will result in fraud or injustice, based on the following:

49.   HEYWOOD, TONI, CHUN and HOWARD and the individual DOE Defendants have treated the assets of as their own or otherwise commingled personal assets with the corporate Defendant HTC Consulting LLC assets.

50.   HEYWOOD, TONI, CHUN and HOWARD and the individual DOE Defendants have failed to maintain minutes or adequate records of Defendant HTC Consulting LLC.

51. HEYWOOD, TONI, CHUN and HOWARD and the individual DOE Defendants dominated and controlled Defendant HTC Consulting LLC.

52. HEYWOOD, TONI, CHUN and HOWARD the individual DOE Defendants have failed to adequately capitalize HTC Consulting LLC.

53. HTC Consulting LLC was a mere shell, instrumentality or conduit for the business of the individual Defendants.

54. Defendants HTC Consulting LLC, were organized by the individual Defendants with the intent to avoid performance by the use of the corporate entities as a shield against personal liability.

ALTER EGO – CKB168 HOLDINGS, LTD; CKB168; CKB168 BIZ SOLUTIONS, INC.; CKB INTERNATIONAL MARKETING; CKB MAX; CYBER KIDS BEST EDUCATION, LTD.; and the individual Defendants RAYLA, HOWARD SHERN, FLORENCE, DAVID, YAO, KIKI, WENDY LEE, JC MA, HEIDI, LI, SHU

55. There is such a unity of interest and ownership of the separate personalities between Defendant corporations CKB168 HOLDINGS, LTD; CKB168; CKB168 BIZ SOLUTIONS, INC.; CKB INTERNATIONAL MARKETING; CKB MAX; and CYBER KIDS BEST EDUCATION, LTD.; (herein collectively "CKB") and the individual Defendants RAYLA, HOWARD SHERN, FLORENCE, DAVID, YAO, KIKI, WENDY LEE, JC MA, HEIDI, LI, SHU, and the individual DOE Defendants, failed to disregard the separate corporate

identity of CKB, from the separate identity of the aforementioned individual

Defendants will result in fraud or injustice, based on the following:

56.   RAYLA, HOWARD SHERN, FLORENCE, DAVID, YAO, KIKI,

WENDY LEE, JC MA, HEIDI, LI, SHU, and the individual DOE Defendants have

treated the assets of as their own or otherwise commingled personal assets with the

corporate Defendants CKB'S assets.

57.   RAYLA, HOWARD SHERN, FLORENCE, DAVID, YAO, KIKI,

WENDY LEE, JC MA, HEIDI, LI, SHU, and the individual DOE Defendants have

failed to maintain minutes or adequate records of Defendants CKB.

58.   RAYLA, HOWARD SHERN, FLORENCE, DAVID, YAO, KIKI,

WENDY LEE, JC MA, HEIDI, LI, SHU, and the individual DOE Defendants

dominated and controlled Defendants CKB.

59.   RAYLA, HOWARD SHERN, FLORENCE, DAVID, YAO, KIKI,

WENDY LEE, JC MA, HEIDI, LI, SHU, the individual DOE Defendants have

failed to adequately capitalize CKB.

60.   Defendant companies CKB were a mere shell, instrumentality or

conduit for the business of the aforementioned individual Defendants.

61.   Defendant companies CKB, were organized by the aforementioned

individual Defendants with the intent to avoid performance by the use of the

corporate entities as a shield against personal liability.

## AGENCY AND ALTERNATIVE CONSPIRACY LIABILITY

62.     At all times herein mentioned, Defendants, including the fictitiously named DOE Defendants, participated in the doing of the acts hereinafter alleged to have been done by the named Defendants, and furthermore, the Defendants, and each of them, were agents, servants, and employees of each of the other Defendants, as well as the agents of all the Defendants, and at all times herein mentioned were acting with the course and scope of said agency and employment.

63.     Alternative to agency liability, Defendants, including the fictitiously named DOE Defendants, entered into a civil conspiracy to commit the actionable wrongs, in which the Defendants, and each of them participated in or in which they concurred, expressly or tacitly, with knowledge of its unlawful purpose.

64.     Independent of common law conspiracy and agency, Defendants, and each of them, are liable under *California Corporations Code* § 25504 as persons, partners, or persons of similar status who directly or indirectly controlled other persons who materially aided in violations of the *California Corporate Securities Law of 1968;* further, said defendants, and each of them are liable under *Corporations Code§§* 25504.1 as persons who materially assisted in the violation of the *California Corporate Securities Law of 1968.*

\\

\\

## FIRST CAUSE OF ACTION
## FRAUD AND DECEIT
## (AGAINST ALL DEFENDANTS)

65.     Plaintiff incorporates herein by reference each and every allegation contained in Paragraphs 1 through 64 of this Complaint as though fully set forth at this point.

66.     Defendants, severally and in concert with each other, misrepresented a series of material facts and concealed a series of other material facts to Plaintiff. Regarding the concealed material facts, such facts materially qualified the facts disclosed, or were likely to mislead, and were known or accessible only to Defendants, who knew that such facts were not known or reasonably discoverable by Plaintiffs, and which facts were actively concealed from Plaintiff.

67.     Defendants' representations were false or suppressed material facts and made with the specific intent to defraud Plaintiff. The true and unconcealed facts are: CKB and Defendants operate a variety of an "endless chain scheme" as that term is defined under California law by offering sales of Hong Kong company stocks to be sold in multi-level marketing format in Chinese communities throughout the US.

68.     The so-called "educational program" was only a prop to give the appearance of a legitimate multi-level marketing program.

69.     Persons participating in this scheme earned commissions or the right to obtain "shares" and earn "dividends of shares" primarily through introducing one or more additional persons into participating in the scheme.

70.     The IPO violated the *California Corporate Securities Law of 1968, Corporations Code* §§ 25000 et seq. (Securities Law of 1968) in that:

a.      The CKB stock was a security whose sale was governed by this law,

b.      CKB was not qualified to issue stock in California;

c.      No application for a permit to issue stock had been made to the California Division of Corporations;

d.      CKB was not exempt from the Securities Law of 1968;

e.      Defendants were not licensed brokers or dealers permitted to sell the CKB stock under the Securities Law of 1968,

f.      Neither CKB nor Defendants had complied with any of the disclosure, licensing or filing requirements of the Securities Law of 1968;

g.      The CKB stock could never have been authorized under the Securities Law of 1968,

h.      Defendants' statements and failures to disclose regarding the IPO were false and fraudulent within the meaning of the California

Securities Law of 1968; violated Section 12(1) of the (federal) Securities Act of 1933, Section 12(2) of the Securities Act of 1933, Section 10(b) of the (federal) Securities Exchange Act of 1934, and Rule 10b-5 promulgated thereunder.

71.    Defendants were under investigation by the SEC or had been the target of an SEC complaint.

72.    When Defendants made said representations to Plaintiff and suppressed material facts, Defendants knew the representations to be false and the suppressions to be material.

73.    Plaintiff justifiably relied on Defendants' representations and the suppressions and would not have invested any sums with Defendants had they known the true facts.

74.    As a direct and proximate result of said fraud and deceit, Plaintiff has sustained economic damages in an amount according to proof, but in no event less than $600,000.00.

75.    The actions of Defendants were (1) fraudulent, meaning an intentional misrepresentation, deceit, or concealment of a material fact known to the Defendants with the intention on the part of the Defendants of thereby depriving a person of property or legal rights or otherwise causing injury; (2) malicious, meaning conduct which is intended by the Defendants to cause injury to Plaintiff or despicable

conduct which is carried on by the Defendants with a willful and conscious disregard of the rights or safety of others; (3) and/or oppressive, meaning despicable conduct that subjects a person to cruel and unjust hardship in conscious disregard of that person's rights; and done with the intention of depriving Plaintiff of substantial rights. The actions of the entity Defendants was by and through the individual Defendants with the knowledge, approval or ratification of said corporate Defendants. Plaintiff is therefore entitled to punitive damages in a sufficient amount to make an example of, punish Defendants, and deter future fraudulent, oppressive and malicious misconduct in the amount according to proof at trial.

## SECOND CAUSE OF ACTION
## ENDLESS CHAIN SCHEME IN VIOLATION OF CALIFORNIA LAW
## (AGAINST ALL DEFENDANTS)

76.    Plaintiff incorporates herein by reference each and every allegation contained in Paragraphs 1 through 75 of this Complaint as though fully set forth at this point.

77.    Defendants, severally and in concert, directly and indirectly, participated, aided and abetted on another, and conspired with one another to participate and to aid and abet one another in a continuous course of conduct in connection with the endless chain scheme in violation of California Penal Code §327 in that Defendants' scheme was for the disposal or distribution of property whereby a participant pays a valuable consideration for the chance to receive

compensation for introducing one or more additional persons into participation in the scheme or for the chance to receive compensation when a person introduced by the participant introduces a new participant.

78.    Accordingly, under California Civil Code § 1689.2, Plaintiff is entitled to and does rescind all contracts upon which the scheme is based.

79.    Further, pursuant to Section 1689.2, Plaintiff is entitled to recover all consideration paid pursuant to the scheme.

80.    Further, pursuant to Section 1689.2, Plaintiff is entitled to reasonable attorney fees.

81.    The actions of Defendants were (1) fraudulent, meaning an intentional misrepresentation, deceit, or concealment of a material fact known to the Defendants with the intention on the part of the Defendants of thereby depriving a person of property or legal rights or otherwise causing injury; (2) malicious, meaning conduct which is intended by the Defendants to cause injury to Plaintiff or despicable conduct which is carried on by the Defendants with a willful and conscious disregard of the rights or safety of others; (3) and/or oppressive, meaning despicable conduct that subjects a person to cruel and unjust hardship in conscious disregard of that person's rights; and done with the intention of depriving Plaintiff of substantial rights. The actions of the entity Defendants was by and through the individual Defendants with the knowledge, approval or ratification of said corporate

Defendants. Plaintiff is therefore entitled to punitive damages in a sufficient amount to make an example of, punish Defendants, and deter future fraudulent, oppressive and malicious misconduct in the amount according to proof at trial.

**THIRD CAUSE OF ACTION**
**VIOLATION OF CORPORATE SECURITIES LAW OF 1968 –**
*Corp. Code§§ 25100 et seq.*
**(AGAINST ALL DEFENDANTS)**

82.    Plaintiff incorporates herein by reference each and every allegation contained in Paragraphs 1 through 81 of this Complaint as though fully set forth at this point.

83.    The IPO violated the *California Corporate Securities Law of 1968, Corporations Code §§ 25000 et seq.* (Securities Law of 1968) in that:

    a.    The CKB stock was a security whose sale was governed by this law,

    b.    CKB was not qualified to issue stock in California;

    c.    No application for a permit to issue stock had been made to the California Division of Corporations;

    d.    CKB was not exempt from the Securities Law of 1968;

    e.    Defendants were not licensed brokers or dealers permitted to sell the CKB stock under the Securities Law of 1968,

f.   Neither CKB nor Defendants had complied with any of the disclosure, licensing or filing requirements of the Securities Law of 1968;

g.   The CKB stock could never have been authorized under the Securities Law of 1968,

h.   Defendants' statements and failures to disclose regarding the IPO were false and fraudulent within the meaning of the California Securities Law of 1968; violated Section 12(1) of the (federal) Securities Act of 1933, Section 12(2) of the Securities Act of 1933, Section 10(b) of the (federal) Securities Exchange Act of 1934, and Rule 10b-5 promulgated thereunder.

84.   Defendants, on or about May 2013, represented to Plaintiff that CKB was qualified to issue stock in California.

85.   This representation was false and was known by each of the Defendants to be false.

86.   CKB was not qualified to issue stock in California.

87.   No application for a permit to issue stock had been made to the California Division of Corporations and that CKB was not exempt from the Corporate Securities Act of 1968.

88.    Plaintiff, believing the representation to be true and relying thereon, overall a total of $600,000.00 worth of CKB stock.

89.    No share certificates were delivered; that as the direct and proximate result of defendants' acts, plaintiff was damaged in the sum of $600,000.00 plus interest from date of sale.

90.    Plaintiff is entitled to recession of the contract for purchase of the Security and return of the purchase price in the amount of $600,000.00 plus interest from the date of sale.

91.    Plaintiff is entitled to reasonable attorney's fees.

92.    The actions of Defendants were (1) fraudulent, meaning an intentional misrepresentation, deceit, or concealment of a material fact known to the Defendants with the intention on the part of the Defendants of thereby depriving a person of property or legal rights or otherwise causing injury; (2) malicious, meaning conduct which is intended by the Defendants to cause injury to Plaintiff or despicable conduct which is carried on by the Defendants with a willful and conscious disregard of the rights or safety of others; (3) and/or oppressive, meaning despicable conduct that subjects a person to cruel and unjust hardship in conscious disregard of that person's rights; and done with the intention of depriving Plaintiff of substantial rights. The actions of the entity Defendants was by and through the individual Defendants with the knowledge, approval or ratification of said corporate

Defendants. Plaintiff is therefore entitled to punitive damages in a sufficient amount to make an example of, punish Defendants, and deter future fraudulent, oppressive and malicious misconduct in the amount according to proof at trial.

**FOURTH CAUSE OF ACTION**
**VIOLATION OF CORPORATE SECURITIES LAW OF 1968 –**
**CA CORP. CODE § 24500 et seq.**
**(AGAINST ALL DEFENDANTS)**

93.   Plaintiff incorporates herein by reference each and every allegation contained in Paragraphs 1 through 92 of this Complaint as though fully set forth at this point.

94.   The CKB stock is a security within the meaning of the Securities Law of 1968, (the "CKB Security" or "Security").

95.   The IPO violated the *California Corporate Securities Law of 1968, Corporations Code* §§ 25000 et seq. (Securities Law of 1968) in that:

    a.   The CKB stock was a security whose sale was governed by this law,

    b.   CKB was not qualified to issue stock in California;

    c.   No application for a permit to issue stock had been made to the California Division of Corporations;

    d.   CKB was not exempt from the Securities Law of 1968;

e.   Defendants were not licensed brokers or dealers permitted to sell the CKB stock under the Securities Law of 1968,

f.   Neither CKB nor Defendants had complied with any of the disclosure, licensing or filing requirements of the Securities Law of 1968;

g.   The CKB stock could never have been authorized under the Securities Law of 1968,

h.   Defendants' statements and failures to disclose regarding the IPO were false and fraudulent within the meaning of the California Securities Law of 1968; violated Section 12(1) of the (federal) Securities Act of 1933, Section 12(2) of the Securities Act of 1933, Section 10(b) of the (federal) Securities Exchange Act of 1934, and Rule 10b-5 promulgated thereunder.

96.   The actions of Defendants were unlawful under *Corp. Code § 25400* in that they were done for the purpose of creating a false or misleading appearance of active trading in the CKB Security or give a false or misleading appearance with respect to the market for the CKB Security, (1) to effect any transaction in the Security which involves no change in the beneficial ownership thereof, and, *Corp. Code § 25401* in that Defendants offered to sell the CKB Security by means of any written or oral communication which included an untrue statement of a material fact

or omits to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading.

97.    Plaintiff is entitled to recession of the contract for purchase of the Security and return of the purchase price in the amount of $600,000.00 plus interest from the date of sale.

98.    Plaintiff is entitled to damages in the amount of the purchase price of $600,000.00 plus interest from the date of sale.

99.    Plaintiff is entitled to reasonable attorney's fees.

100.    The actions of Defendants were (1) fraudulent, meaning an intentional misrepresentation, deceit, or concealment of a material fact known to the Defendants with the intention on the part of the Defendants of thereby depriving a person of property or legal rights or otherwise causing injury; (2) malicious, meaning conduct which is intended by the Defendants to cause injury to Plaintiff or despicable conduct which is carried on by the Defendants with a willful and conscious disregard of the rights or safety of others; (3) and/or oppressive, meaning despicable conduct that subjects a person to cruel and unjust hardship in conscious disregard of that person's rights; and done with the intention of depriving Plaintiff of substantial rights. The actions of the entity Defendants was by and through the individual Defendants with the knowledge, approval or ratification of said corporate Defendants. Plaintiff is therefore entitled to punitive damages in a sufficient amount

to make an example of, punish Defendants, and deter future fraudulent, oppressive and malicious misconduct in the amount according to proof at trial.

## FIFTH CAUSE OF ACTION
## VIOLATION OF SECTION 12(1) OF THE SECURITIES ACT OF 1933
## (AGAINST ALL DEFENDANTS)

101.   Plaintiff incorporates herein by reference each and every allegation contained in Paragraphs 1 through 100 of this Complaint as though fully set forth at this point.

102.   Investments in the CKB Security marketing scheme, as described in the factual allegations section of this complaint, constitute investment contract securities (hereafter, "Securities"), as described in Section 2 of the Securities Act, and for the purpose of the registration and anti-fraud provisions of the Act, in that, as a matter of economic reality, the difference income positions in the CKB pyramid marketing plan are investments of money in a common enterprise, with profits to be derived from the essential managerial and entrepreneurial efforts of Defendants and others in the pyramid.

103.   The IPO violated the *Securities Act of 1933* in that:

      a.   The CKB stock was a security whose sale was governed by this law,

      b.   CKB was not qualified to issue stock in California;

c.   No application for a permit to issue stock had been made to the California Division of Corporations;

d.   CKB was not exempt from the Securities Law of 1968;

e.   Defendants were not licensed brokers or dealers permitted to sell the CKB stock under the Securities Law of 1968,

f.   Neither CKB nor Defendants had complied with any of the disclosure, licensing or filing requirements of the Securities Law of 1968;

g.   The CKB stock could never have been authorized under the Securities Law of 1968,

h.   Defendants' statements and failures to disclose regarding the IPO were false and fraudulent within the meaning of the California Securities Law of 1968; violated Section 12(1) of the (federal) Securities Act of 1933, Section 12(2) of the Securities Act of 1933, Section 10(b) of the (federal) Securities Exchange Act of 1934, and Rule 10b-5 promulgated thereunder.

104.   Defendants, directly and indirectly, have participated, aided and abetted one another and conspired with one another to participate and to aid and abet one another in a continuous course of conduct, by use of the mails, wires, and other means and instruments of communication, transportation and interstate commerce,

and offered for sale, sold and were the proximate cause or substantial and necessary factors in the sale of the subject securities in violation of Section 5 of the Securities Act, 15 U.S.C. § 77(e), in that no registration statement was in effect or had been filed with respect to such securities, and the offer for sale and sale of such securities by Defendants was not exempt from the registration requirements of Section 5 by Sections 3 or 4 of the Securities Act, 15 U.S.C. §§ 77(c) and 77(d).

105.   Plaintiff has been induced to pay substantial amounts of money to purchase Defendants' securities as a direct and proximate result of Defendants' violations of Section 5, and Plaintiff, accordingly, seeks to recover the full amount of consideration paid for said securities, with interest thereon, upon tender of such securities, which tender is hereby made, or, in the alternative, seeks damages sustained as a result of the sale of such securities, pursuant to Section 12(1) of the Securities Act, 15 U.S.C. § 77(1).

**SIXTH CAUSE OF ACTION**
**VIOLATION OF SECTION 12(2) OF THE SECURITIES ACT OF 1933**
**(AGAINST ALL DEFENDANTS)**

106.   Plaintiff incorporates herein by reference each and every allegation contained in Paragraphs 1 through 105 of this Complaint as though fully set forth at this point.

107.   The IPO violated the *Securities Act of 1933* in that:

a.      CKB stock was a security whose sale was governed by this law,

b.    CKB was not qualified to issue stock in California;

c.    No application for a permit to issue stock had been made to the California Division of Corporations;

d.    CKB was not exempt from the Securities Law of 1968;

e.    Defendants were not licensed brokers or dealers permitted to sell the CKB stock under the Securities Law of 1968,

f.    Neither CKB nor Defendants had complied with any of the disclosure, licensing or filing requirements of the Securities Law of 1968;

g.    The CKB stock could never have been authorized under the Securities Law of 1968,

h.    Defendants' statements and failures to disclose regarding the IPO were false and fraudulent within the meaning of the California Securities Law of 1968; violated Section 12(1) of the (federal) Securities Act of 1933, Section 12(2) of the Securities Act of 1933, Section 10(b) of the (federal) Securities Exchange Act of 1934, and Rule 10b-5 promulgated thereunder.

108.   Defendants, directly and indirectly, have participated, aided and abetted one another, and have conspired with one another to participate and to aid and abet one another in a continuous course of conduct by use of the mails, wires and other

means and instruments of communication and transportation and interstate

commerce, and offered for sale, sold, and were the proximate cause and substantial

factors in the sale of the subject Security to Plaintiff by means of written

promotional materials, oral communications and violations of Section 12(2) of the

Securities Act, 15 U.S.C. § 77(1)(2).

109.   In the course of their offer for sale and sale of the Security to Plaintiff,

Defendants have made untrue statements of material fact and omitted to state

material facts necessary in order to make the statements, in light of the

circumstances under which they were made, not misleading, at the time they offered

for sale and sold said Securities to Plaintiff.

110.   Each of the Defendants at various times have made or assisted the other

Defendants in making the untrue statements and omissions of material fact

enumerated above in connection with the offer and sale of securities to Plaintiff.

111.   As a result of the material false representations and omissions of said

Defendants, Plaintiff was induced to purchase the subject securities.

112.   As a proximate result of the foregoing acts, omissions and

representations, Plaintiff has been damaged in the amount of his lost investments.

Plaintiff, accordingly, seeks to recover the full amount of said consideration for such

Securities, with interest thereon, or for damages sustained as the result of the sale of

said Securities, pursuant to Section 12(2) of the Securities Act of 1933, 15 U.S.C. §

77(1 )(2).

### SEVENTH CAUSE OF ACTION
### VIOLATION OF SECTION 10(b) OF THE SECURITIES EXCHANGE ACT OF 1934, AND RULE 10(b)-5
### (AGAINST ALL DEFENDANTS)

113.   Plaintiff incorporates herein by reference each and every allegation

contained in Paragraphs 1 through 112 of this Complaint as though fully set forth at

this point.

114.   The Securities, as described in the Factual Allegations section of this

complaint, are investment contract securities within the meaning of, and regulated

by, the Securities Exchange Act of 1934, 15 U.S.C. § 78c.

115.   The IPO violated the *Securities Act of 1934* in that:

a.   The CKB stock was a security whose sale was governed by this

law,

b.   CKB was not qualified to issue stock in California;

c.   No application for a permit to issue stock had been made to the

California Division of Corporations;

d.   CKB was not exempt from the Securities Law of 1968;

e.   Defendants were not licensed brokers or dealers permitted to sell

the CKB stock under the Securities Law of 1968,

f.  Neither CKB nor Defendants had complied with any of the disclosure, licensing or filing requirements of the Securities Law of 1968;

g.  The CKB stock could never have been authorized under the Securities Law of 1968,

h.  Defendants' statements and failures to disclose regarding the IPO were false and fraudulent within the meaning of the California Securities Law of 1968; violated Section 12(1) of the (federal) Securities Act of 1933, Section 12(2) of the Securities Act of 1933, Section 10(b) of the (federal) Securities Exchange Act of 1934, and Rule 10b-5 promulgated thereunder.

116.  Defendants, severally and in concert, directly and indirectly, participated, aided and abetted one another, and conspired with one another to participate and to aid and abet one another in a continuous course of conduct in connection with the purchase and sale of unregistered securities in violation of Section 10(b) of the Exchange Act, 15 U.S.C. § 78(G) and in contravention of Rule 10b-5 promulgated thereunder, and by use of the mails and other means and instruments of transportation and communications and interstate commerce:

a.  employed manipulative and deceptive devices, contrivances, schemes and artifices to defraud Plaintiff;

  b.  made untrue statements of material fact and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and,

  c.  employed acts, practices and a course of business which operated or would operate as a fraud and deceit upon Plaintiff.

  117. The purchases of such securities by Plaintiff have been made in reliance upon the manipulative and deceptive devices, contrivances, schemes and artifices employed by defendants in reliance on the integrity of the market, and in reliance upon the untrue statements and omissions of material facts made by Defendants in connection with the offer and sale of said securities to Plaintiff. Defendants knew that the devices, contrivances, schemes and artifices were fraudulent at the time they employed them, or employed them in reckless disregard thereon, and employed them for the purpose and with the intent to deceive and defraud and oppress Plaintiff, or in reckless disregard of Plaintiff's interests and the truth. Defendants have conspired with each other to market securities which were essentially worthless, and fraudulently promoted, as legitimate, sham investments which were not entitled to be placed on the market. Defendants also knew that the untrue statements and omissions of material fact that they made were false and misleading at the time they were made, or were made, in reckless disregard thereto, and made

them for the purpose of, and with the intent to, deceive, defraud and oppress

Plaintiff or in the reckless disregard of Plaintiff's interests and of the truth.

118.   As a direct and proximate result of the foregoing, Plaintiff was induced

by Defendants to purchase said securities and sustained losses, and was damaged

thereby in that sum plus additional sums in accrued and unpaid interest, according to

proof.

## EIGHTH CAUSE OF ACTION
## COMMON COUNTS – MONEY HAD AND RECEIVED
## (AGAINST ALL DEFENDANTS)

119.   Plaintiff incorporates herein by reference each and every allegation

contained in Paragraphs 1 through 118 of this Complaint as though fully set forth at

this point.

120.   Defendants received money that was intended to be used for the benefit

of Plaintiff.

121.   The money was not used for the benefit of Plaintiff.

122.   Defendants have not returned the money to Plaintiff in spite of repeated

demands by Plaintiff to Defendants.

123.   Defendants owe Plaintiff the amount of $600,000.00 together with

prejudgment interest thereon.

\\

\\

### NINTH CAUSE OF ACTION
### CONVERSION
### (AGAINST ALL DEFENDANTS)

124.   Plaintiff incorporates herein by reference each and every allegation contained in Paragraphs 1 through 123 of this Complaint as though fully set forth at this point.

125.   Plaintiff had a right to possess the exact amount of $600,000.00 given to Defendants.

126.   Defendants took possession of the exact amount of $600,000.00 under fraudulent circumstances as alleged above, and refused to return this money to Plaintiff.

127.   Plaintiff was injured as a result of this conversion in the amount of not less than $600,000.00, and Defendants' conduct was a substantial factor in causing this harm.

128.   The actions of Defendants were (1) fraudulent, meaning an intentional misrepresentation, deceit, or concealment of a material fact known to the Defendants with the intention on the part of the Defendants of thereby depriving a person of property or legal rights or otherwise causing injury; (2) malicious, meaning conduct which is intended by the Defendants to cause injury to Plaintiff or despicable conduct which is carried on by the Defendants with a willful and conscious disregard of the rights or safety of others; (3) and/or oppressive, meaning despicable

conduct that subjects a person to cruel and unjust hardship in conscious disregard of that person's rights; and done with the intention of depriving Plaintiff of substantial rights. The actions of the entity Defendants was by and through the individual Defendants with the knowledge, approval or ratification of said corporate Defendants. Plaintiff is therefore entitled to punitive damages in a sufficient amount to make an example of, punish Defendants, and deter future fraudulent, oppressive and malicious misconduct in the amount according to proof at trial.

## TENTH CAUSE OF ACTION
## UNFAIR COMPETITION, CAL. BPC. CODE §17200 et seq.
## (AGAINST ALL DEFENDANTS)

129.   Plaintiff incorporates herein by reference each and every allegation contained in Paragraphs 1 through 128 of this Complaint as though fully set forth at this point.

130.   The actions of Defendants alleged above constitute, within the meaning of the *California Unfair Competition Law,* unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and acts prohibited by Chapter 1 (commencing with Section 17500) of Part 3 of Division 7 of the *Business and Professions Code.*

131.   Under Section 17203, Plaintiff is entitled to injunctive relief as necessary to enjoin the above-alleged practices which violate the provisions of the unfair competition law, including, but not limited to, injunctions restraining

Defendants and their agents, servants, employees and all other persons acting on their behalf from continuing to operate the endless chain scheme using both a pyramid sales scheme and the sale of worthless securities in violation of California and federal law.

132.   Plaintiff is entitled to restitution of all money obtained by Defendants by means of such unfair competition and disgorgement of any profits obtained by Defendants by the use of such money in an amount according to proof but not less than $600,000.00.

133.   Plaintiff is entitled to attorney's fees according to proof pursuant to the private attorney general doctrine, *Code of Civil Procedure§* 1021.5 in that this action will confer a significant non-pecuniary benefit on the general public, the necessity and financial burden of private enforcement are such as to make the award appropriate and the fees should not, in the interest of justice, be paid out of the recovery.

## PRAYER

*WHEREFORE*, Plaintiff prays as follows:

**On Claims Arising Under California Law**

1.     For general damages for fraud in the amount of not less than $600,000.00 according to proof at trial.

2.     For rescission of purchases of subject endless chain scheme and recovery of the consideration paid to Defendants and other amounts expended in connection therewith, plus interest thereon at the legal rate from the date of said purchase;

3.     For all consideration paid pursuant to Defendants under the endless chain scheme;

4.     For restitution of all moneys paid along with interest from the time of sale.

**On Claims Arising Under Federal Law**

1.     For rescission of purchases of subject securities and recovery of the consideration paid to Defendants in the amount of not less $600,000.00 according to proof at trial, and other amounts expended in connection therewith, plus interest thereon at the legal rate from the date of said purchase;

2.     For compensatory damages for lost principal investments, together with interest thereon at the legal rate, plus additional general and incidental damages according to proof;

3.     For exemplary and punitive damages for Defendants' fraud according to proof;

\\

\\

4.      For disgorgement by Defendants, and restitution to Plaintiff, of all earnings, profits, compensation and benefits obtained by defendants as a result of their deceptive business practices.

**For all claims**

1.      For costs of suit, including reasonable attorney fees.

2.      For exemplary and punitive damages for defendants' fraud according to proof.

3.      For such other and further relief as the Court may deem proper.

Respectfully submitted,

THOMAS BUSINESS LAW GROUP

By: Michael Liu
Attorneys for Plaintiff

DATED November 11, 2014

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**EXHIBIT A**

Branch Wire Number   SRO   001 - 1010   78

PAID
ACH
5-28-13


PNC

(*) asterisks indicate required fields

| | |
|---|---|
| Account Title* | AMERICA PACIFIC WALNUT CORP |
| Addr Line 1* | 8501 SNIDER RD |
| City* | LOVELAND |
| ID#* | TV434814 |
| Phone* | 513 / 689 - 6121 Ext. |

TIN# (Last 4-digits) 9582

| | |
|---|---|
| Addr Line 2 | |
| State* | OH |
| ID Type* | State Drivers License |
| Alt Phone | / - Ext. |

Zip* 45140
Exp* 01/01/2014

Name of client initiating wire*   JIE SHEN

Branch Representative Name*   SHELLY MAY        Branch Phone* 513 / 575 - 7600 Ext. 3

Market*   BRANCH        Initiating Branch Market/Bank Id*        Initiating Branch Cost Center*

Wire Amount*
200000.00        Currency* USD - US DOLLAR

Note: If Foreign Currency amount is greater than $250,000.00 US equivalent, you must complete the manual wire form and fax to DRU Branch Internal Control for proces
Do not initiate foreign currency wires after 5:00 p.m. est and future date. If initiated after 5:00 p.m. est the wire will be cancelled

Rate*

Date   Send

Note: If after 5:00 PM EST, wires will be processed the following business day.

Debit Information        D-DDA/Savings        Account#*   4240780825

AMERICA PACIFIC WALNUT CORP

1398E FAY RD

LOVELAND  OH 45140-9473

| Beneficiary Information | Not On Us | | |
|---|---|---|---|
| | | Account#* | 34428-01679-8 |
| | | Beneficiary Name* | CYBER KIDS BEST EDUCATION LIMITED |
| | | Address1* | 35F GLOUCESTER TOWER |
| | | Address2* | 15 QUEEN'S RD |
| | | City,State/City,Country* | HONG KONG |

| Beneficiary's Bank | B-Swift Bic | | |
|---|---|---|---|
| | | ABA/SWIFT* | SCBKHKHHXXX |
| | | Bank Name* | SHANGHAI COMMERCIAL BANK LIMITED |
| | | Address | HONG KONG  HK |
| | | City | . |
| | | State/Country* | |

---

Not for Branch Use-Back Office Only        Additional Information /Further Credit To

CKB# CKB287348

USER ID# 1YS188

Purpose of Wire

INVESTMENT

Client Signature*:_____ Branch Rep Sign:_____ Reference Number:_____ 5/28/2013 9:20 A.M.

20130528 - 00014261

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17          **EXHIBIT B**
18
19
20
21
22
23
24
25
26
27
28

| CUSTOMER'S ORDER NO. | | | | DATE 7 - 2 3 - 201 | | |
|---|---|---|---|---|---|---|
| NAME | | | | | | |
| ADDRESS | | | | | | |
| CITY, STATE, ZIP  Wire | | | | | | |
| SOLD BY | CASH | C.O.D. | CHARGE | ON. ACCT. | MDSE. RETD. | PAID OUT |

| QUAN. | DESCRIPTION | PRICE | AMOUNT |
|---|---|---|---|
| 1 | | | |
| 2 | CKB. | 125000. | |
| 3 | | | |
| 4 | | | |
| 5 | | | |
| 6 | | | |
| 7 | | | |
| 8 | | | |
| 9 | | | |
| 10 | | | |
| 11 | | | |
| 12 | | | |

RECEIVED BY

A-4705
T-46528

**KEEP THIS SLIP FOR REFERENCE**

01-11

## Approve Payments - Approval Status

Close | Print

| Account | Trace ID | Template ID | Template Name | Type | Value/Send Date | Beneficiary | Amount | Status |
|---------|----------|-------------|---------------|------|-----------------|-------------|--------|--------|
| 4240780825 | 201307046427 | | | Domestic | 07/23/2013 | CHUN KIN POON | 125,000.00 USD | Approved |

Approved By: Marty Ma - 07/23/2013 09:57 AM EDT

Copyright © 2013, The PNC Financial Services Group, Inc. All Rights Reserved.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17                                    **EXHIBIT C**
18
19
20
21
22
23
24
25
26
27
28

| CUSTOMER'S ORDER NO. | | | | DATE 7-26-2013 | | |
|---|---|---|---|---|---|---|
| NAME | | | | | | |
| ADDRESS | | | | | | |
| CITY, STATE, ZIP  Wire | | | | | | |
| SOLD BY | CASH | C.O.D. | CHARGE | ON. ACCT. | MDSE. RETD. | PAID OUT |

| QUAN. | DESCRIPTION | PRICE | AMOUNT |
|---|---|---|---|
| 1 | | | |
| 2 | CKB. | 1 25000 | 00 |
| 3 | | | |
| 4 | | | |
| 5 | | | |
| 6 | | | |
| 7 | | | |
| 8 | | | |
| 9 | | | |
| 10 | | | |
| 11 | | | |
| 12 | | | |

RECEIVED BY

A-4705
T-46528

**KEEP THIS SLIP FOR REFERENCE**

01-11

# Full Detail Wire Activity Report

Initiation Date: 07/26/2013

PNC

07/26/2013 10:43:22 AM

## Account Summary

| Account | Trace ID | Template ID | Template Name | | | | Amount | Count |
|---|---|---|---|---|---|---|---|---|
| 4240780825 | | | | | | | 125,000.00 USD | 1 |

**American Pacific Walnut Corp**

Total Debits : 125,000.00 USD

| Account | Trace ID | Template ID | Type | Value / Send Date | Beneficiary | Amount | Status | Fed Ref No. |
|---|---|---|---|---|---|---|---|---|
| 4240780825 | 201307082941 | | Domestic | 7/26/2013 | CHUN KIN POON | 125,000.00 USD | Confirmed | 000382 |

**Beneficiary Information**
Account: 2064010180

**Audit History**
Initiated by: JIE SHEN 07/26/2013 08:34 AM ET
Approved by: Marty Ma 07/26/2013 09:22 AM ET

**Beneficiary Bank**
ID: 322070381
Name: EAST WEST BANK

Address: PASADENA,CA

**Wire TRN**
130726013288

## Grand Totals

| | Amount | Count |
|---|---|---|
| Total Debits : | 125,000.00 USD | 1 |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**EXHIBIT D**

F5168

| CUSTOMER'S ORDER NO. | | | | | DATE 8-20-2013 | | |
|---|---|---|---|---|---|---|---|
| NAME | | | | | | | |
| ADDRESS | | | | | | | |
| CITY, STATE, ZIP Wire | | | | | | | |
| SOLD BY | CASH | C.O.D. | CHARGE | ON. ACCT. | MDSE. RETD. | PAID OUT | |

| | QUAN. | DESCRIPTION | PRICE | AMOUNT | |
|---|---|---|---|---|---|
| 1 | | | | | 00 |
| 2 | | CKB | | 100000 | |
| 3 | | | | | |
| 4 | | | | | |
| 5 | | | | | |
| 6 | | | | | |
| 7 | | | | | |
| 8 | | | | | |
| 9 | | | | | |
| 10 | | | | | |
| 11 | | | | | |
| 12 | | | | | |
| RECEIVED BY | | | | | |

A-4705
T-46528

**KEEP THIS SLIP FOR REFERENCE**

01-11

## Approve Payments - Approval Status

Close    Print

| Account | Trace ID | Template ID | Template Name | Type | Value/Send Date | Beneficiary | Amount | Status |
|---------|----------|-------------|---------------|------|-----------------|-------------|--------|--------|
| 4240780825 | 201308315895 | | | Domestic | 08/20/2013 | CHUN KIN POON | 100,000.00 USD | Approved |

Approved By: Marty Ma - 08/20/2013 09:34 AM EDT

Copyright © 2013, The PNC Financial Services Group, Inc. All Rights Reserved.

PAID
wire
8-20-2013